IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICARDA BURRELL | CRIMINAL ACTION<br><br>NO. 22-294-KSM-1 |

**MEMORANDUM**

**MARSTON, J.**                                                                                                    **February 27, 2025**

On the eve of sentencing, Defendant Ricarda Burrell filed the instant motion to withdraw her guilty plea. Burrell hinges her motion on a baseless assertion of innocence to the charges of mail fraud and theft of public money in connection with the receipt of pandemic-related federal financial assistance. Though she freely and voluntarily pled guilty to these charges under oath in May 2024, she now regrets that decision and asks for another opportunity to "fight to prove her innocence," which she claims she has consistently maintained since being indicted in September 2022.

The Court denied Burrell's motion to withdraw her guilty plea at the conclusion of a hearing on the motion on February 25, 2025. The Court now explains why.

**I.      BACKGROUND**

On September 8, 2022, a federal grand jury returned a four-count bill of indictment against Burrell, charging her with mail fraud, theft of public money, and bank fraud in connection with Burrell's applications for and receipt of unemployment benefits under the Pandemic Unemployment Assistance ("PUA") program and a small business loan under the Paycheck Protection Program ("PPP"). (Doc. No. 1.) After nearly two years, several proffer meetings with the Government (*see* Doc. No. 78 at 3 n.2), and this Court's grant of *six*

unopposed motions to continue filed by Burrell (Doc. Nos. 9, 14, 19, 23, 31, 35), Burrell pled guilty to the PUA-related counts (mail fraud and theft of public money) before this Court on May 9, 2024. (Doc. No. 49.)[1]

While under oath during her change of plea hearing, Burrell confirmed that her lawyer had fully explained to her that she has the right to plead not guilty and proceed to trial, that she had discussed with her lawyer any possible defenses she might have, and that she was fully satisfied with her lawyer's representation and advice. (May 9, 2024 Rough Hr'g Tr. 12:3–18.) She also confirmed that she was voluntarily pleading guilty because she is, in fact, guilty of those counts. (*Id.* 19:17–20.) Finally, Burrell confirmed that she agreed with and fully admitted to the facts the Government summarized as those it intended to prove at trial, which included that her statements on her PUA application that she had lost her job with Amtrak due to COVID-19 and that her last day worked was April 1, 2020 were false "as [she] did not lose her job due to the COVID-19 pandemic and thereafter continued to be employed by Amtrak and received income from that employment." (*Id.* 33:9–34:22.)

After accepting Burrell's guilty plea, the Court scheduled her sentencing for September 3, 2024, but it was subsequently rescheduled for September 23, 2024. (Doc. Nos. 51, 64.) Eleven days before the scheduled sentencing, Burrell's then-counsel from the Federal Community Defender Office for the Eastern District of Pennsylvania moved to withdraw as Burrell's attorney. (Doc. No. 65.) On September 23, 2024, the Court held a hearing and granted counsel's motion. (Doc. No. 68.) The Court appointed Burrell's new counsel that same day (*id.*) and ultimately rescheduled her sentencing hearing for January 30, 2025 (Doc. No. 71). On the eve of

---

[1] Pursuant to the plea agreement, the Government will move to dismiss the PPP-related counts following Burrell's sentencing hearing on the PUA-related counts. (*See* May 9, 2024 Rough Hr'g Tr. 11:14–16.)

sentencing, Burrell filed the instant motion to withdraw her guilty plea. (Doc. No. 74.) The Government opposes the motion. (Doc. No. 78.) The Court held a hearing on the motion on February 25, 2025, and denied the motion at the conclusion of the hearing. (Doc. No. 79; Feb. 25, 2025 Rough Hr'g Tr. 50:2–5.)

II.     **LEGAL STANDARD**

"Once accepted, a guilty plea may not automatically be withdrawn at the defendant's whim." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). Instead, "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence [only] if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Defendant's burden of demonstrating a "fair and just" reason for withdrawing a plea is "substantial." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).

"Whether to grant a motion to withdraw a guilty plea lies within the discretion of the district court." *United States v. James*, 928 F.3d 247, 253 (3d Cir. 2019). When evaluating such a motion, the Court must consider three factors: "(1) whether the defendant asserts [her] innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Jones*, 336 F.3d at 252.

With respect to the first factor, "[b]ald assertions of innocence are insufficient to permit a defendant to withdraw [her] guilty plea." *Id.* Rather, "[a]ssertions of innocence must be buttressed by facts in the record that support a claimed defense." *Brown*, 250 F.3d at 818. The defendant must also "give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea." *Id.* (internal quotations omitted). Regarding the second factor, "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the

expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Id.* at 815 (internal quotations omitted). Finally, the Government need not demonstrate that it would be prejudiced by the withdrawal of the guilty plea if the defendant has failed to establish that the other two factors support a withdrawal. *Jones*, 336 F.3d at 255.

III.  **DISCUSSION**

Burrell argues that her consistent claims of actual innocence, which "fell on deaf ears" with respect to her former counsel, and the continued availability of Government witnesses—the sole witnesses in this case—constitute "fair and just" reasons for withdrawal of her guilty plea. (*See* Doc. No. 74 at 4–6.) The Government counters that Burrell cannot prevail on her claim of actual innocence, has failed to establish any valid reasons for the withdrawal, and incorrectly asserts that her withdrawal would not result in prejudice to the Government. (*See* Doc. No. 78 at 3–9.) Upon consideration of the evidence presented at the hearing, including sworn testimony by Senior Special Agent John Hess of Amtrak's Office of Inspector General and Burrell, and the parties' arguments, the Court finds that Burrell has failed to demonstrate a "fair and just" reason justifying withdrawal of her guilty plea.

A.  **First Factor: Burrell's Assertion of Innocence**

With respect to the first factor, Burrell initially contended that she was "actually innocent," i.e., "she did not knowingly make a false demand for PUA benefits" because "her hours were substantially reduced as a result of the COVID-19 pandemic and . . . she made a claim for the days she was rendered unable to work." (Doc. No. 74 at 5; Feb. 25, 2025 Rough Hr'g Tr. 4:6–13.) In support of this assertion, Burrell offered her bank statements for the relevant time period, which reflected direct deposits of declining amounts from Burrell's employer, Amtrak. (Feb. 25, 2025 Rough Hr'g Tr. 4:14–6:2.) The Government responded that

4

Burrell's claim of actual innocence is "directly disproven by her statement to investigators, her sworn testimony at the plea hearing, . . . the testimonial and documentary evidence provided by [Burrell's employer,] Amtrak," and, critically, Burrell's sworn testimony at the February 25 hearing on the instant motion. (Doc. No. 78 at 5–7; *see* Feb. 25, 2025 Rough Hr'g Tr. 7:24–9:11; 10:12–11:21; 13:1–16:4; 46:23–47:9.) In particular, the Government pointed to Amtrak's records of Burrell taking unpaid sick and FMLA leave and arriving late to work during the relevant time period, which the Government argued were the reasons why Burrell received lower paychecks from Amtrak. (Feb. 25, 2025 Rough Hr'g Tr. 7:24–9:1.)

And, as the Government noted, Burrell's testimony at the February 25 hearing contradicted her claim of actual innocence. Burrell testified that Amtrak's intense work conditions during the pandemic, including often working back-to-back shifts because other employees were not reporting to work, caused her to suffer extreme mental and physical exhaustion. (*Id.* 25:8–29:14.) In turn, she was forced to call out of work and then decided to file for unemployment benefits, and subsequently went on medical leave. (*Id.* 29:14–24; 48:14–50:1.)

> Q. So what changed, what happened with you in regards to your relationship with Amtrak?
>
> A. Mentally, I could not take it any more. Mentally, I could not—physically I could not take it any more.
>
> Q. So what did you do?
>
> A. I called out of work. I mentally, physically I could not do it. So when you run out of sick days, they make you use your vacation days. After you run out of vacation days, you have [n]o income.
>
> Q. So what did you decide to do?
>
> A. I filed for unemployment. And after I filed for unemployment, I then went out on a medical.

(*Id.* 29:10–24.)

While the Court appreciates the difficult work conditions Burrell allegedly faced during the pandemic, the reality is that Burrell chose not to go to work, which did not entitle her to collect PUA benefits. Accordingly, the Court finds that Burrell's assertion of actual innocence—entirely belied by Burrell's own testimony, among other record evidence—is insufficient to support her requested withdrawal. *See Brown*, 250 F.3d at 818.

### B.  Second Factor:  Burrell's Reasons for Withdrawing The Plea

With respect to the second factor, Burrell argues that her claim of actual innocence "fell on deaf ears" with respect to her initial counsel, who "felt this information would be relevant at sentencing but did not agree that it was a defense at trial." (Doc. No. 74 at 5–6.) Burrell concedes that she agreed with counsel "but now regrets that choice." (*Id.* at 6.) The Government contends that Burrell's "second guessing of her decision or any anticipated sentence" is not a valid reason for permitting her to withdraw her guilty plea. (Doc. No. 78 at 7; *see* Feb. 25, 2025 Rough Hr'g Tr. 21:21–22:4.) The Court agrees.

Burrell admits that she has changed her mind as to how she would like to proceed against these charges, which the Third Circuit has explicitly held is "not [an] adequate reason[] to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Brown*, 250 F.3d at 815; *see Jones*, 336 F.3d at 252. And to the extent that Burrell is suggesting that her former counsel was ineffective for proceeding to trial based on a defense of actual innocence, she has offered no evidence or argument that establishes her counsel's advice was "under all the circumstances unreasonable under prevailing professional norms" and that she "suffered 'sufficient prejudice' from [her] counsel's errors." *Jones*, 336 F.3d at 253–54 (holding that defendant must meet both of these

6

factors in order to justify withdrawal of a guilty plea based on ineffective assistance of counsel) (quoting *United States v. Day*, 969 F.2d 39, 45 (3d Cir. 1992)). Rather, the record reflects that Burrell stated under oath at her change of plea hearing that she was fully satisfied with her counsel's representation and advice and felt that she had sufficient time to consult with counsel, which included discussion of any possible defenses and the maximum possible punishments for the offenses to which she intended to plead guilty. (May 9, 2024 Rough Hr'g Tr. 12:7–18.) *See United States v. Ollie*, 624 F. App'x 807, 810 (3d Cir. 2015) (affirming district court's denial of motion to withdraw guilty plea where defendant's plea hearing testimony contradicted defendant's arguments of ineffective assistance of counsel).

The Court thus finds that Burrell has failed to set forth any adequate reason for withdrawing her guilty plea.

### C. Third Factor: Prejudice to The Government

Finally, with respect to the third factor, Burrell claims that the Government "has not been prejudiced at all" because its case is "based solely on government witnesses who are available to testify at trial," and "[t]here are no civilians who will be inconvenienced when this matter would be ultimately called to trial." (Doc. No. 74 at 6.) The Government is not required to show that it would be prejudiced by the withdrawal of the guilty plea—nor is the Court required to consider this factor—where, as here, a defendant has failed to demonstrate that the other factors support a withdrawal. *See Hill-Johnson*, 806 F. App'x at 188 ("The court need not address the third factor 'when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea.'" (quoting *Jones*, 336 F.3d at 255)); *Jones*, 336 F.3d at 255 ("Because we have concluded that the District Court did not err in finding that Jones failed to meaningfully reassert his innocence or provide a strong reason for withdrawing his plea, the Government was not required

to show prejudice."). Accordingly, the Court declines to assess whether Burrell's withdrawal of her guilty plea would prejudice the Government and denies the motion based on Burrell's failure to establish that her plea withdrawal request is supported by a sufficient assertion of innocence and adequate reasons for the withdrawal.

## IV.     CONCLUSION

For the reasons set forth above, the Court denies Burrell's motion to withdraw her guilty plea. An appropriate Order follows.